```
                              FILED
                          MISSOULA, MT

                      2006 APR  3  PM 2 27

                        PATRICK E. DUFFY
                    BY _____
                          DEPUTY CLERK
```

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| | | |
|---|---|---|
| THE WILDERNESS SOCIETY; AMERICAN WILDLANDS; and PACIFIC RIVERS COUNCIL, | ) ) ) | CV 03-119-M-DWM |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | ORDER |
| MARK REY, Under Secretary of Agriculture, Natural Resources and Environment; ANN VENEMAN, Secretary of Agriculture; and DALE BOSWORTH, Chief, United States Forest Service, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## I.  Introduction and Factual Background

Plaintiffs Wilderness Society, American Wildlands, and Pacific Rivers Council challenge the U.S. Forest Service's promulgation of three regulations that are intended to implement the 1992 Forest Service Decisionmaking & Appeals Reform Act

-1-

("ARA").  Before the Court are motions for summary judgment by
all parties.

     In 1992, Congress passed the 1992 Forest Service
Decisionmaking and Appeals Reform Act, Pub. L. No. 102-381, §
322, 106 Stat. 1419 (1992)(codified as 16 U.S.C. § 1612 note.).
The statute requires the Secretary of Agriculture, through the
Chief of the Forest Service, to establish a public notice and
comment process for projects implementing certain land and
resource management plans and to modify the appeals procedure for
such decisions.  ARA § 322(a).  The Forest Service first
promulgated regulations to fulfill its duties under the ARA in
1993.  On December 18, 2002, the Forest Service published
proposed revised regulations in the Federal Register, took
comments on them, and then published final new regulations on
June 4, 2003.  See Notice, Comment, and Appeal Procedures for
National Forest System Projects and Activities, 68 Fed. Reg.
33,582 (2003)(codified as 36 C.F.R. § 215); Administrative Record
("A.R.") Doc. No. 75.

     The provisions of the revised regulations to which
Plaintiffs object are 36 C.F.R. § 215.20(b), which states that
"[d]ecisions of the Secretary of Agriculture or Under Secretary,
Natural Resources and Environment are not subject to the notice,
comment, and appeal procedures set forth in this part.  A
decision by the Secretary or Under Secretary constitutes the

-2-

final administrative determination of the Department of
Agriculture"; 36 C.F.R. § 215.13(a), which narrows the parties
holding a right to appeal from those who have notified the Forest
Service of their interest in the proposed action to those who
have filed "substantive comments"; and 36 C.F.R. § 215.12(f),
which exempts from the regulations all Forest Service projects
that have been "categorically excluded" from public comment under
the National Environmental Policy Act ("NEPA").[1]

## II. Analysis

Plaintiffs, Defendants, and Intervenors have all filed
motions for summary judgment. Defendants assert jurisdictional
arguments challenging standing and ripeness in addition to their
substantive arguments. Intervenors join these jurisdictional
arguments.

### A.   Jurisdictional arguments

#### 1.   Standing

Defendants claim Plaintiffs have failed to establish a
"concrete and particularized" injury sufficient to convey
standing. Defendants argue that the deprivation of an
"opportunity to participate in the Forest Service administrative
process," as alleged in the Complaint, is not cognizable as an

---

[1]In Plaintiffs' brief in support of their motion for summary
judgment, they also ask for 36 C.F.R. § 215.4(a) to be remanded. This
request is not in the Complaint and is therefore not properly before
the Court on the parties' motions for summary judgment.

injury that bestows standing.  A general interest in having laws and procedures followed is not sufficient to establish standing. Lujan v. Defenders of Wildlife, 504 U.S. 555, 573-574 (1992).

Plaintiffs respond that they face an "injury in fact" in two ways.  First, they face an environmental injury because they use the natural areas that may be harmed, in Plaintiffs' view, by these new regulations, which may allow activities to proceed to which Plaintiffs would object.  Second, Plaintiffs claim they suffer an "informational injury," an injury that arises when one is deprived of information to which one is legally entitled.

The burden of establishing standing falls on Plaintiffs. Defenders, 504 U.S. at 559.

> First, the plaintiff must have suffered an injury in fact--an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Id. at 560-561 (citations, internal quotation marks omitted).

In Defenders, the Supreme Court concluded that the plaintiffs did not have standing for several reasons.  That case considered the reach of the Endangered Species Act ("ESA") and whether its provisions requiring consultation applied to actions overseas funded in part by the United States.  The Court

-4-

concluded that plaintiffs, though they expressed legitimate and
deep interest in observing endangered species overseas, could not
demonstrate that their hopes to do so, or to do so again some
unspecified time in the future were sufficient to establish an
imminent concrete injury.  Id. at 564.

Defenders carefully maps the situations in which a
plaintiff's concern for the environment can establish standing
even when the individual is not the immediate object of
government action.  The Court explained:

> "When the suit is one challenging the legality of
> government action or inaction, the nature and extent of
> facts that must be averred . . . in order to establish
> standing depends considerably upon whether the
> plaintiff is himself an object of the action (or
> forgone action) at issue.  If he is, there is
> ordinarily little question that the action or inaction
> has caused him injury, and that a judgment preventing
> or requiring the action will redress it.  When,
> however, as in this case, a plaintiff's asserted injury
> arises from the government's allegedly unlawful
> regulation (or lack of regulation) of someone else,
> much more is needed."  Id. at 561-562 (emphasis in
> original).

This situation does not fit easily into the dichotomy
discussed in Defenders.  On the one hand, the ARA regulates the
Secretary of Agriculture and not Plaintiffs.  On the other hand,
the purpose of the ARA is to bestow a right on those who would
wish to receive notice and comment, i.e., people similarly
situated to Plaintiffs, whose affidavits demonstrate their use of
the notice and comment procedures.  In Defenders, the ESA had
nothing to do with individuals in the plaintiffs' position, but

-5-

rather was written for the benefit of endangered species.   In this case, Plaintiffs are the object of "forgone action," in Defenders' terms, if they are entitled to notice and comment and certain appeals by law.

The Defendants here characterize Plaintiffs' claim as a "procedural injury," which Defenders makes clear is sufficient for standing only in limited circumstances.   The Defendants' use the term "procedural" as it was used in Defenders, which addressed whether one has standing because one wants the procedures of the ESA to be followed, regardless of whether the law vests the plaintiff with a particular role in that procedure. Plaintiffs also refer to their injury as an injury to "procedural rights," but they understand those rights to be much more substantial.   Plaintiffs mean that the law guarantees for them a particular procedure, i.e., notice and comment, and not a particular result.

In this instance, Plaintiffs' injury, if it is deprivation of congressionally-mandated notice and comment and appeals procedures, is more than the affront to all citizens that occurs any time the law is not followed.   But in any case, the Defenders Court wrote, "We do not hold that an individual cannot enforce procedural rights; he assuredly can, so long as the procedures in question are designed to protect some threatened concrete interest of his that is the ultimate basis of his standing."   504

-6-

U.S. at 573 n.8 (emphasis in original).  See also Citizens for
Better Forestry v. U.S.D.A., 341 F.3d 961, 969-70 (9th Cir.
2003).  The thrust of the Defenders opinion is that a citizen
does not have standing to sue simply because the law was not
followed.  504 U.S. at 573-578.  That is not the situation here,
where citizens have been guaranteed certain rights of
participation, and the Plaintiffs have been actively exercising
those rights.  See Spooner Dec., ¶¶ 4, 5, 7; Anderson Dec., ¶¶ 4-
9.  "The . . . injury required by Art. III may exist solely by
virtue of statutes creating legal rights, the invasion of which
creates standing."  Defenders, 504 U.S. at 578.  The ARA, unlike
the ESA at issue in Defenders, creates for the public a specific
right, that is, the right to a notice and comment and appeals
procedures.

Plaintiffs claim a likelihood of environmental injury if
they are not allowed to comment on and appeal forest management
decisions.  Congress created the notice and comment period in
order to ensure public participation and thereby improve decision
making through greater information, but the right created by the
ARA is not the right to better decisions; it is the right to
comment and appeal, regardless of the eventual outcome.
Plaintiffs' affidavits demonstrate how they use the areas
affected by the Service's action and are therefore injured by
their inability to participate, as allegedly mandated by law, in

-7-

the management of those areas, but the danger of specific environmental effects resulting form the Plaintiffs' exclusion from the process does not itself confer standing.

This injury is sufficiently concrete and particularized because the harm is the loss of the opportunity to comment and appeal, not the specific impact or lack thereof of the Plaintiffs' comments. Plaintiffs "need not assert that any specific injury will occur in any specific national forest that their members visit. The asserted injury is that environmental consequences might be overlooked as a result of deficiencies in the government's analysis under environmental statutes." Citizens for Better Forestry, 341 F.3d at 971-972 (internal quotation marks omitted). The injury occurs before any negative environmental consequences. "This becomes particularly clear if we bear in mind the statutory source that defines appellants' right and imposes appellees' duty. That standing examination, in other words, must focus on the likelihood that the defendants' action will injure the plaintiff in the sense *contemplated by Congress.*" Idaho Conservation League v. Mumma, 956 F.2d 1508, 1516 (9th Cir. 1992) (emphasis in original). Because the ARA's purpose is to establish notice and comment and appeals procedures, deprivation of the procedures injures the Plaintiffs in a sense contemplated by Congress.

Plaintiffs also claim an "informational injury" as explained

-8-

in Federal Election Commission v. Akins, 524 U.S. 11 (1998). In Akins, a group of voters sued the Federal Election Commission for failing to require the American Israel Public Affairs Committee to disclose information regarding membership, contributions and expenditures under the Federal Election Campaign Act of 1971 (FECA). The plaintiffs' case was dismissed for lack of standing in the trial court. The United States Supreme Court reversed and remanded, concluding plaintiffs had standing under FECA.

> The injury of which respondents complain-their failure to obtain relevant information-is injury of a kind that FECA seeks to address . . . . Given the language of the statute and the nature of the injury, we conclude that Congress, intending to protect voters such as respondents from suffering the kind of injury here at issue, intended to authorize this kind of suit . . . . The "injury in fact" that respondents have suffered consists of their inability to obtain information . . . that, on respondents' view of the law, the statute requires that AIPAC make public . . . . [T]his Court has previously held that a plaintiff suffers an "injury in fact" when the plaintiff fails to obtain information which must be publicly disclosed pursuant to statute.

Akins, 524 U.S. at 20-21.

Plaintiffs point to ARA § 322(a) & (b)(1), which say "the Secretary shall give notice" of "proposed actions of the Forest Service" as creating a statutory right to notice that is thwarted, Plaintiffs allege, by the regulations in question. Defendants cite American Historical Association v. National Archives and Records Administration, 310 F. Supp. 2d 216 (D.D.C. 2004), as a rebuttal to Akins. In American Historical Association, the plaintiffs sued in order to gain access to

-9-

Ronald Reagan's presidential papers, which they claimed were being illegally withheld pursuant to an Executive Order. The district court concluded there that, because all unprivileged documents had been turned over by the time of the court's decision, there was no remedy that could redress the plaintiffs' future concerns.

The nature of an informational injury such as this one is that one would not know that action is being considered until it is too late and irreversible action as already been taken. Plaintiffs do not have to discover an action for which they were not provided notice and then sue to prevent the action on the basis of the ARA. The statutory injury, if it exists, is the violation of the obligation to provide notice. The Defendants' challenge to standing fails.

### 2. Ripeness

Defendants cite <u>Lujan v. National Wildlife Federation</u> ("<u>NWF</u>"), 497 U.S. 871, 891 (1990) to argue that promulgation of a regulation is not an action ripe for judicial review under the APA until the regulation has resulted in some concrete action that harms the Plaintiffs. Defendants contend the Court should wait until "Plaintiffs can identify an instance in which a provision of the Appeals Rule is actually applied to them in a manner that causes them injury." Def.'s Br. at 7.

Plaintiffs respond that when a party challenges a

regulation's facial conformity with its authorizing statute, the question is purely one of statutory interpretation that would not benefit from further factual development of the issues, citing Whitman v. Am. Trucking Assns., Inc., 531 U.S. 457, 458 (2001).

In NWF, the Supreme Court wrote:

> Under the terms of the APA, respondent must direct its attack against some particular "agency action" that causes it harm.  Some statutes permit broad regulations to serve as the "agency action," and thus to be the object of judicial review directly, even before the concrete effects normally required for APA review are felt.  Absent such a provision, however, a regulation is not ordinarily considered the type of agency action "ripe" for judicial review under the APA until the scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out, by some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him.  (The major exception, of course, is a substantive rule which as a practical matter requires the plaintiff to adjust his conduct immediately.  Such agency action is "ripe" for review at once, whether or not explicit statutory review apart from the APA is provided.[)]

NWF, 497 U.S. at 891."

In NWF, the rules at issue were Bureau of Land Management ("BLM") plans regarding "vast territories of land" and BLM's decision to grant permission for certain activities on these lands, to decline to take certain actions, and to take other actions if requested.  In its very nature, then, the "rule" to which the case refers is different from the regulations in this case.  These regulations are much more like the exception identified in NWF, in which a substantive rule forces a plaintiff

to change its conduct immediately.  <u>See</u> Spooner, Anderson, Stix Declarations.

Ripeness requires the court "to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." <u>Abbott Labs. v. Gardner</u>, 387 U.S. 136, 149 (1967)(abrogated on other grounds, <u>Califano v. Sanders</u>, 430 U.S. 99 (1977)).  Hardship requires "adverse effects of a strictly legal kind," which may exist when a regulation grants, withholds, or modifies any formal legal license, power or authority or creates legal rights or obligation.  <u>Ohio Forestry Assoc. v. Sierra Club</u>, 523 U.S. 726, 733 (1998).[2]  In addition, a dispute over a regulation may be ripe if it affects a person's primary conduct or causes him practical harm.  <u>National Park Hospitality Assoc. v. Dept. of the Interior</u>, 538 U.S. 803, 810 (2003).  In <u>National Park</u>, the Court found the regulation not ripe for review and concluded "the impact of the regulation could not be said to be felt immediately by those subject to it in conducting their day-to-day affairs."  538 U.S. at 810.

In this case, those subject to the regulation, i.e., Plaintiffs who make use of the notice and comment and appeals procedures, have found their day-to-day affairs impacted already

---

[2]As an example of why the <u>Ohio Forestry</u> plaintiffs' case was not ripe, the Supreme Court wrote, "Thus, for example, the Plan does not give anyone a legal right to cut trees, nor does it abolish anyone's legal authority to object to trees being cut."  In this case, of course, that is exactly what Plaintiffs allege.  523 U.S. at 733.

by the regulation.  The nature of the modification of a notice

and comment procedure is necessarily immediate—if one depends

upon an agency for notice and the agency changes its policy to

withhold notice, one is at a loss to know if the lack of notice

is meaningful on any particular day.  The Defendants would have

Plaintiffs wait until a project that has been excluded from the

comment and appeal process reaches the implementation stage, and

then use the legal process to temporarily halt the project while

the parties litigate the issue.  In that case, the real benefit

of the administrative appeals process, i.e., a mechanism by which

the Forest Service can respond to citizen input without engaging

in a legal dispute, has already been lost.  Waiting until a

particular project has been excluded will not provide the Court

with more information about the merits of this claim but will

result in increased harm to Plaintiffs.  Plaintiffs are already

on the doorstep of harm.  The case is ripe for decision.

## 3.    **Sovereign Immunity**

Although not raised by the Defendants, the sovereign

immunity of the United States presents an additional

jurisdictional problem in this case.  "It is elementary that

'[t]he United States, as sovereign, is immune from suit save as

it consents to be sued . . . , and the terms of its consent to be

sued in any court define that court's jurisdiction to entertain

the suit.'"  United States v. Mitchell, 445 U.S. 535, 538 (1980)

-13-

(quoting United States v. Sherwood, 312 U.S. 584, 586 (1941)).
The Plaintiffs in this case have failed to allege a waiver of
sovereign immunity in their Complaint.  Compare e.g. Wilderness
Society v. Rey, CV 01-219-M-DWM, Complaint dated December 18,
2001 (Doc. No. 1), ¶¶ 18 & 21 (alleging violation of the
Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706).

    Because of the Plaintiffs' failure to allege a waiver of
sovereign immunity, they will be required to show cause why their
Complaint should not dismissed for lack of subject matter
jurisdiction.  However, in the event Plaintiffs are able to show
cause why the Complaint should not be dismissed or otherwise cure
the jurisdictional problem, the Court will move on to consider
the case on the merits.

## B.   Motions for Summary Judgment

    Plaintiffs' allege three violations of the Appeals Reform
Act by promulgation of 36 C.F.R. § 215.20(b), § 215.13(a), and §
215.12(f).  In analyzing a rule promulgated by an agency to
implement a statute, the court uses the two-step procedure
developed in Chevron U.S.A. Inc. v. Natural Res. Def. Council,
Inc., 467 U.S. 837, 842-845 (1984).

    First, always, is the question whether Congress has
    directly spoken to the precise question at issue.  If
    the intent of Congress is clear, that is the end of the
    matter; for the court, as well as the agency, must give
    effect to the unambiguously expressed intent of
    Congress.  If, however, the court determines Congress
    has not directly addressed the precise question at
    issue, the court does not simply impose its own

construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

.    .    .

If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.

.    .    .

We have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations has been consistently followed by this Court whenever decision as to the meaning or reach of a statute has involved reconciling conflicting policies, and a full understanding of the force of the statutory policy in the given situation has depended upon more than ordinary knowledge respecting the matters subject to agency regulations.

Chevron, 467 U.S. at 842-844

A facial challenge to a regulation will be reviewed under an even more deferential standard. Reno v. Flores, 507 U.S. 292, 301 (1993). That some factual scenarios may exist in which a regulation would not be valid as applied does not make the regulation facially invalid. Rather, Plaintiffs must establish that no set of circumstances exist under which the regulation would be valid. Id. at 301.

**1.    First Cause of Action: 36 C.F.R. § 215.20(b)**

-15-

The ARA directs the Secretary of Agriculture to establish a notice and comment process "for proposed actions of the Forest Service concerning projects and activities implementing land and resource management plans developed under the Forest and Rangeland Renewable Resources Planning Act of 1974 (16 U.S.C. §§ 1601 et seq.)" and to "modify the procedure for appeals of decisions concerning such projects." The new 36 C.F.R. § 215.20, headed "Secretary's authority," provides:

> (a) Nothing in this section shall restrict the Secretary of Agriculture from exercising any statutory authority regarding the protection, management, or administration of National Forest System lands.

> (b) Decisions of the Secretary of Agriculture or Under Secretary, Natural Resources and Environment are not subject to the notice, comment, and appeal procedures set forth in this part. A decision by the Secretary or Under Secretary constitutes the final administrative determination of the Department of Agriculture.

It is this second paragraph that Plaintiffs find objectionable, claiming it contradicts the directive of the underlying statute. Defendants respond that Congress did not intend to "change the Secretary of Agriculture's delegated authority to make Forest Service land management decisions," and therefore the exclusion of Secretary-approved projects from the notice procedure is proper.

### a.    Collateral Estoppel

As a preliminary matter, Plaintiffs argue that this is the very issue decided by this Court in its 2002 decision in

-16-

<u>Wilderness Society v. Rey</u>, 180 F. Supp. 2d 1141 (D. Mont. 2002)

("<u>Wilderness Society I</u>"), and therefore Defendants are

collaterally estopped from arguing the regulation is valid.   In

fact, Plaintiffs allege that 36 C.F.R. § 215.20 is an attempt to

overcome a judicial ruling adverse to Defendants' position.   In

the 2002 case, Mark Rey, as Under Secretary of Agriculture, had

signed the Record of Decision for the Bitterroot Burned Area

Recovery project, maintaining that his approval constituted the

final administrative determination for the project.   Therefore,

the administrative appeals process was never took place.   This

Court held that the failure to implement the appeals procedure

established at the direction of Congress was unlawful and

remanded the decision to the Forest Service for compliance with

the ARA.   The first question now before the Court is what binding

legal effect, if any, does that decision have on the issue at

hand in this case?

Plaintiffs claim that "[c]ollateral estoppel applies when an

issue of fact or law is actually litigated and determined by a

valid and final judgment, and the determination is essential to

the judgment," citing <u>Arizona v. California</u>, 530 U.S. 392, 414

(2000) (citations, internal quotation marks omitted).   In

Plaintiffs' view, this Court has already considered the issue of

the legality of circumventing the appeals process through the

signature of the Under Secretary and has decided it in favor of

-17-

Plaintiffs.

"The general rule of issue preclusion is that if an issue of
fact or law was actually litigated and determined by a valid and
final judgment, the determination is conclusive in a subsequent
action between the parties, whether on the same or a different
claim."  Charles Alan Wright, Law of Federal Courts, § 100A, 724
(5th ed., West 1994).  The finality requirements for issue
preclusion have relaxed somewhat in the last few decades. Charles
Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal
Practice and Procedure, § 4434 (2005); Restatement (Second) of
Judgments, § 13 (2004).  Defendants are correct that generally
and historically, a preliminary injunction is insufficiently
final to warrant preclusive effect.  But Plaintiffs are correct
that this is not a hard and fast rule, and preliminary
injunctions may occasionally preclude further litigation on an
issue.  <u>Miller Brewing Co. v. Schlitz Brewing Co.</u>, 605 F.2d 990,
995-996 (7th Cir. 1979).  Whether a ruling is sufficiently final
to preclude future litigation of the same issue is a question
left to the court's discretion.  The factors to consider include
the nature of the decision, the adequacy of hearing, and the
opportunity to appeal.  Wright & Miller, § 4434.

Here, caution favors deciding the issue on its merits.  On
the one hand, this Court's preliminary injunction order meets the
requirements for a loosened finality standard: it was a

-18-

determination of a pure question of law, decided with full briefing and hearing, with a remand to the agency such that the decision suggested a final determination of that legal issue before this Court.  Defendants had the opportunity to appeal the determination and did so.  However, the parties settled the case before a final judgment on the merits was entered here, and Defendants dismissed their appeal of the preliminary injunction.  Settlements generally do not result in a preclusive effect, except to the extent the document itself, as a contract between the parties, determines the scope of future duties between parties.  <u>Arizona v. California</u>, 530 U.S. at 414.  There was no discussion of the preclusive effect or lack thereof of the settlement in <u>Wilderness Society I</u>, but neither side conceded any legal issue, despite the Forest Service dismissing its appeal of the preliminary injunction.  Line 10 of the Settlement Agreement states, "Nothing in this settlement shall be construed as an admission of fact or law by any party on any issue, including plaintiffs' claim that the Forest Service has violated the Appeals Reform Act."  <u>See</u> CV 01-219-M-DWM (Doc. No. 57).  Therefore, there was no final determination of the legal question.

Moreover, though the legal reasoning offered by the Plaintiffs in support of their position is the same in this action as the last, the enactment of the regulations through a

full notice and comment procedure is not immaterial.  This is one
of the Defendants' main arguments, that the first case questioned
an interpretation of the statute itself in a specific factual
context (the Bitterroot Burned Area Recovery Plan), whereas this
one is a facial challenge of properly promulgated regulations.
Therefore, the issue must be considered anew.

### b.    Substantive Analysis

Plaintiffs contend that 36 C.F.R. § 215.20 conflicts with
the ARA because the ARA requires a notice, comment, and appeal
system for all activities implementing a forest plan.  The
Defendants' argument is that Congress "did not attempt [through
the ARA] to change the Secretary of Agriculture's delegated
authority to make Forest Service land management decisions, and
that the preservation of that authority in the new Appeals Rule
is an appropriate interpretation of the ARA . . . ."  Def.'s Br.
at 8.  The Defendants defend this proposition by relying on
Chevron deference, claiming Congress "did not explicitly require
that decisions implementing forest plans made directly by the
Secretary or Undersecretary were to be made subject to the
appeals process."  Def.'s Br. at 9.  The Defendants base this
interpretation on the establishment of the notice and comment and
appeals processes for "actions of the Forest Service," (ARA §
322(a) & (c)) and the retention of final appeals decisions in the
Secretary (ARA §322(d)(4)).  See also 7 C.F.R. § 2.12.  Congress

-20-