would have known that the Secretary had authority to make forest land decisions, Defendants argue, and could have explicitly required that those too would be subject to notice, comment, and appeal.

The Defendants also argue that the structure of the appeals system is such that there is no one to review the decisions of the Secretary; therefore, his decisions must be exempt from review. Def.'s Br., 10; ARA § 322(c)(2). Defendants conclude that if all decisions must undergo formal review, the Secretary would be prohibited, contrary to his delegation, from making forest decisions, because they could not be reviewed. Defendants conclude the regulation is not "manifestly contrary to the statute" and therefore valid, citing Chevron, 467 U.S. at 844. Def.'s Br. at 11. Defendants also point out that the public will still be involved in decision making through the National Environmental Policy Act ("NEPA").

Plaintiffs rely heavily on this Court's decision in Wilderness Society I, concluding that the signature alone of the Under Secretary cannot transform a Forest Service decision about land management into something else exempt from the ARA.

Step one of the Chevron analysis requires the court to look at the face of statute to see if Congress spoke to this issue directly. Congress nowhere mentions the possibility that the Secretary himself would make "a decision of the Forest Service

concerning actions referred to in subsection (a), [i.e., projects and activities implementing land and resource management plans developed under the Forest and Rangeland Renewable Resources Planning Act of 1974]." ARA § 322(c). Step two, then, is whether the agency's interpretation of the statute is "based on a permissible construction of the statute." Chevron, at 843. I conclude it is not.

Defendants point out the use of the phrase "notice and comment for actions of the Forest Service" and interpret that to mean decisions signed by the Secretary and Under Secretary are not reviewable. If the Court assumes Congress was familiar with the "background regulatory structure when it enacted the ARA," as Defendants say it must, then the conclusion drawn by the Defendants is not persuasive. They suggest that Congress assumed that a decision signed by anyone higher than the Chief of the Forest Service would be exempt from public participation. A more plausible interpretation is that Congress understood that nobody would be making Forest Service land management decisions who was not actually in the Forest Service—that land management would be done by the people responsible for managing the lands and responsive to the local community, not by the Secretary in Washington. If the purpose of the statute was to involve the public in the procedure for making decisions about National Forest lands, it is improbable that Congress intended to exempt

the most controversial decisions from the process. If Congress had wanted to exempt any forest land activities from notice, comment, and appeal, it could have written the ARA to do so. Congress did not. Section 215.20 is an attempt at an end run around Congress' clear intent for the public to have access to and a role in decision making on forest land management.

### 2. Second Cause of Action: 36 C.F.R. § 215.13(a)

The ARA reads, in paragraph (c):

> RIGHT TO APPEAL.--Not later than 45 days after the date of issuance of a decision of the Forest Service concerning actions referred to in subsection (a), a person who was involved in the public comment process under subsection (b) through submission of written or oral comments or by otherwise notifying the Forest Service of their interest in the proposed action may file an appeal.

The new regulation, 36 C.F.R. § 215.13(a), limits the right to appeal to "[i]ndividuals and organizations *who submit substantive written or oral comments* during the 30-day comment period for an environmental assessment, or 45-day comment period for a draft environmental impact statement." (Emphasis added.) Plaintiffs argue that this regulation creates a prerequisite to appeal (i.e., submission of substantive comments during the planning process) not authorized by the statute.

Defendants contend that it is "clear that one of Congress' purposes in establishing a notice and comment procedure through the ARA was to solicit and encourage *meaningful participation* from the public." Def.'s Br. at 14 (emphasis in original),

-23-

citing AR Doc. Nos. 1 & 2. That purpose is best effectuated, Defendants say, by limiting appeal to those who provide substantive comments, i.e., "[c]omments that are within the scope of the proposed action, are specific to the proposed action, have direct relationship to the proposed action and include supporting reasons for the Responsible Officer to consider." AR Doc. No. 75, pp. 16-17; 36 C.F.R. § 215.2; Def.'s Br. at 14-15.

Plaintiffs insist that the statutory language does not require substantive comment prior to appeal, and characterize the Defendants' argument as nothing more than an explanation of why the rule stated in § 215.13(a) would be a good idea. Plaintiffs also point out that now that the regulations require participation before a final decision is made, one may not know what problems the final project poses until it is too late to submit comments. In that case, an interested party compelled by law to comment prematurely may not be able to speak substantively about concerns that arise at a later stage of the proceedings.

Chevron requires deference to an agency interpretation when there is room for interpretation. In this instance, the statute precludes Defendants' interpretation, and the Court need go no further than the plain language of the statute. Chevron, 467 U.S. at 842-843. By giving the right to appeal to those who comment or "otherwise notify[]" the Forest Service, Congress cast a deliberately wide net. The point of the statute is to

-24-

increase public participation, which the statute does by conferring the right to appeal upon a broad range of planning process participants who have notified the Forest Service of their interest, either through submission of comments or "otherwise." The Forest Service cannot, on its own initiative, reduce the scope of the right to appeal created by the statute. In the interest of streamlining or expediting the appeals process, the Forest Service appears to be trying to limit access to the process, and that contradicts the statute. If Congress had no specific notice and comment process in mind, the ARA could have consisted only of § 322(a), which instructs the Secretary to set up a procedure. Congress did not give the Secretary absolute discretion but rather gave some parameters. Included among those parameters was an expansive right to appeal, and the Forest Service cannot limit that right through regulation. Section 215.13(a) is invalid.

### 3. Third Cause of Action: 36 C.F.R. 215.12(f)

The new § 215.12(f) reads, in part: "Decisions and actions not subject to appeal: The following decisions and actions are not subject to appeal under this part, except as noted: . . . (f) Decisions for actions that have been categorically excluded from documentation in an EA or EIS pursuant to FSH 1909.15, Chapter 30, Section 31." Categorical exclusions are exempted from NEPA's environmental analysis provisions because they are

-25-

determined to have an insignificant effect on the environment. 40 C.F.R. § 1501.4(a)(2). Plaintiffs argue that Congress enacted the Appeals Reform Act specifically to guarantee the right to public notice, comment, and appeal of all National Forest logging projects, and that the new regulation would undermine that statutory purpose.

Defendants claim that "Congress delegated to the Forest Service the responsibility for delineating which projects should be subject to notice, comment and appeal, and which should not, and the Forest Service has reasonably determined that activities that do not have a significant impact on the environment should be exempted from the extensive . . . process." Def.'s Br. at 16. Congress passed the ARA in response to the Forest Service's 1992 regulations regarding notice and comment. One of the 1992 regulations would have eliminated appeal of projects categorically excluded under NEPA. Defendants claim here that Congress did not specifically rebut this regulation, as they did another proposed regulation, and therefore Congress did not intend for the ARA to supercede the Forest Service's regulation on this point. Defendants interpret the statutory language making the ARA applicable to "projects and activities implementing land and resource management plans" as delineating between administrative appeals of forest plans and project level decisions, rather than defining a comprehensive or set of

activities. See AR Doc. No. 75, p. 5 (68 Fed. Reg. 33, 585); Def.'s Br. at 17. By this, Defendants mean that when the ARA says it applies to all of those activities, it is making clear that administrative appeals must be available for both forest plan level and projects, not that all of those projects must always be appealable. Defendants call this a gap left by Congress for the agency to fill, relying on the first step of the Chevron analysis, and conclude that the Forest Service filled the gap appropriately. Defendants also argue that Congress did not intend for the comment and appeals rule to apply to projects that have minimal environmental impact, and the NEPA process's categorical exclusions are a good method for determining which projects will have minimal impact.

Plaintiffs' reject the contention that Congress left a gap to be filled by the Secretary, relying upon the legislative history, in which Senator Fowler states that the law's purpose was to ensure the public's "right to appeal a timber sale decision of the Forest Service." AR Doc. No. 75, p. 5; 138 Cong. Rec. at S11,643. Plaintiffs also oppose the Defendants' use of the Forest Service's 1992 proposal as an interpretive tool for the ARA. Plaintiffs claim Defendants have mischaracterized the 1992 proposal by saying that it exempted NEPA categorically excluded projects, because the proposal "uniformly sought to exempt all National Forest projects." Pl.'s Br. at 18 (emphasis

in original). Plaintiffs then interpret Congress' rebuttal of this Forest Service proposal by the statutory language to mean that all projects should be included. Finally, Plaintiffs reject the role of NEPA analysis as a proxy for ARA participation. Plaintiffs point to Congress' interest in and focus on citizen participation—the environmental impacts of the planned activities are not a trigger for notice and comment; instead, notice and comment are required for every decision making process.

Defendants' interpretation is a contrived reading of the plain language of the statute. If a law applies without exemption, an agency may not use regulations to carve out exemptions. Moreover, NEPA serves its own independent purpose, which is environmental review. Congress would have had no reason to enact the ARA if it felt it could rely on NEPA's extant notice and comment provisions. The Defendants argue that the only actions that will evade notice and comment here are either emergencies, which already have an ARA exemption, or are insignificant, in which case they are already exempt from NEPA. But Congress enacted the ARA with NEPA already in the background. Congress must have intended to do something more or ARA would be superfluous. The Court will not assume Congress intended to pass a statute that adds nothing to the current legal fabric. What the ARA added was an assurance that the public would be involved in all decision making. The ARA is a statute with independent

force and effect; neither Forest Service regulations nor NEPA's categorical exemptions are capable of eroding the effect of the ARA until it is nothing more but a gesture of intent. Section 215.12(f) is invalid.

### III. Order

Based on the foregoing, the challenged regulations are invalid as contrary to the ARA. However, as noted earlier, the Court is without jurisdiction to issue a remedy because of the Plaintiffs' failure to allege a waiver of sovereign immunity.

Accordingly, it is therefore HEREBY ORDERED that within 20 days of the entry of this order, Plaintiffs shall cure the defect in their Complaint or show cause why the case should not be dismissed for lack of jurisdiction.

DATED this 24th day of March, 2006.

DONALD W. MOLLOY, CHIEF JUDGE
UNITED STATES DISTRICT COURT